IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN GRUBER,

                                                OPINION and ORDER
                    Plaintiffs,
                                                    16-cv-664-bbc
         v.

CITY OF PORTAGE, CITY OF PORTAGE
POLICE DEPARTMENT, SHAWN MURPHY,
KENNETH MANTHEY and KLAUDE THOMPSON,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff John Gruber brought suit under 42 U.S.C. § 1983 and Wisconsin state law against various individuals and entities in Columbia County, Wisconsin for allegedly violating his rights in their efforts to condemn his property to make way for a new construction project.  In an order entered on February 27, 2017, dkt. #68, I granted defendants' separately-filed motions to dismiss.  I concluded that plaintiff could not challenge the condemnation of his property because he had not exhausted his remedies under state law.  Williamson County Regional Planning Comission v. Hamilton Bank, 473 U.S. 172, 193-94 (1985) (federal courts cannot adjudicate § 1983 claims directly related to land dispute until property owner exhausts available state remedies for compensation). However, it appeared that plaintiff may have intended to raise separate federal claims under the equal protection clause that defendants had subjected him to various types of harassment

1

leading up to the condemnation. Although those claims were not subject to the exhaustion requirement, plaintiff had not provided fair notice of the claims as required by Fed. R. Civ. P. 8, so I dismissed the claims without prejudice and gave plaintiff an opportunity to amend the complaint with respect to those claims only.

Plaintiff has filed an amended complaint, dkt. #71, which defendants City of Portage, City of Portage Police Department, Shawn Murphy, Kenneth Manthey and Klaude Thompson seek to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that plaintiff continues to allege wrongdoing and injuries solely related to the condemnation of his property. Dkt. #78. (Although the other defendants also filed motions to dismiss the amended complaint, the motions are moot because I granted the parties' stipulations of dismissal with respect to those defendants. Dkt. ##90 and 94.) Although plaintiff has not filed a response to defendants' challenges to his amended complaint, he has remained active in this case and does not appear to have abandoned his claims against defendants. The Court of Appeals for the Seventh Circuit has held that a plaintiff may rely on his pleadings, and "[a] pro se plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss." Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir. 1995) (A "plaintiff can simply rest on the assumed truthfulness and liberal construction afforded his complaint.").

For the reasons discussed below, defendants' motion to dismiss will be denied in part and granted in part. Although many of the allegations in the amended complaint fail to state an equal protection claim upon which relief may be granted, I conclude that plaintiff has

stated an equal protection claim against defendants City of Portage, Murphy, Manthey and Thompson for their actions associated with ticketing and searching cars parked on or near plaintiff's business and allegedly unnecessary searches of the property.  Defendant City of Portage Police Department will be dismissed because it is not a suable entity.

For the sole purpose of deciding this motion, I accept as true the following facts alleged in plaintiff's amended complaint.

ALLEGATIONS OF FACT

For the past 32 years, plaintiff John Gruber has been the owner and operator of Gruber Automotive at 208 E. Edgewater Street in Portage, Wisconsin.   The property is located adjacent to the Historic Portage Canal System, which Columbia County has selected, along with adjoining properties, for the construction of new government buildings as part of an economic development plan.

Defendants City Administrator Shawn Murphy, City of Portage Police Department, Chief of Police Manthey and Officer Klaude Thompson conspired with Columbia County officials and some private property owners to defraud taxpayers and enrich themselves unjustly with federal and state funds targeted for the redevelopment plan.  On November 1, 2015, Murphy and Manthey examined vehicles in a parking lot across the street from Gruber Automotive.  Plaintiff parked his customers' cars in the lot while the cars awaited repair.  The lot was public and unrestricted.  Pursuant to orders from Murphy and Manthey, police officers, including defendant Thompson, tagged the vehicles registered to plaintiff and

3

his customers with a notice stating that the vehicles would be towed as "junk" if they were not moved from the lot. Only vehicles associated with plaintiff's business were targeted. The practice continued on a weekly basis through February 15, 2017, resulting in lost revenues of $3,000 a week from lost customers, hiring extra employees to move cars and disruptions in repair work. In addition, in December 2015, Thompson and other officers towed several vehicles that were legally parked at plaintiff's business during inclement weather and made plaintiff pay the towing and storage fees.

Since 2006, plaintiff has leased storage and yard space at 1000 Jefferson Street in Portage from FAL Group, Inc. to operate part of his business. In March 2015, defendant Shawn Murphy, the Portage City Administrator, ordered the city attorney to reclassify the zoning on the Jefferson Street property so that a conditional use permit would be necessary to run an automotive repair business. FAL Group incurred substantial fees in permit violations that it passed along to plaintiff. The property was not subject to a zoning or business ordinance before the redevelopment project began. In October 2015, Murphy and other city representatives told Janet Atkins, the president of FAL Group, that Gruber Automotive was a magnet for "bottom feeders," created a "bad image" for Portage's economic development project and "must go." Dkt. #71, ¶ 7.

Beginning in December 2015, plaintiff observed Portage police vehicles driving past the Jefferson Street property at all hours. In March 2016, one of plaintiff's employees saw defendant Murphy and a police officer searching vehicles parked at the Jefferson Street property and alerted plaintiff, who confronted them and asked them to leave. Murphy

stated that "Portage is my city and I can do whatever I want," dkt. #71, ¶ 9, and the police officer put his hand on his gun.  The two left with some paper documents that they had removed from the vehicles.  (Plaintiff describes an earlier incident involving another man allegedly shot by the police, but I have not included those allegations because they are not relevant to plaintiff's claims.)

Also in March 2016, a Portage police officer dumped garbage onto the Jefferson Street property  and broke glass in some of the vehicles parked there.  He took pictures and used them as evidence against plaintiff.  Although plaintiff reported the incident, no investigation took place.

In April 2016, FAL Group was issued a zoning ordinance violation for having "junk" vehicles on the Jefferson Street property without a conditional use permit.  Atkins received several more citations for violations of ordinances related to garbage, inoperable vehicles and tall grass.  Although plaintiff tried to resolve the issue for Atkins, who is often out of town, FAL Group had to pay a permit fee and fines to resolve the ordinance violations.

In April 2016, defendant Murphy appeared with water utility employees and threatened to shut off the water at the Jefferson Street property until plaintiff allowed Murphy, Manthey and Thompson to search the property to see whether it was compliant with drinking water requirements.  In May 2016, Murphy, Manthey, Thompson and water service employees arrived unannounced to search the property, and the water was turned back on within a few days.

Between May 16, 2016 and July 2016, defendants Murphy, Manthey and Thompson

5

ordered city employees to block the streets for a subcontractor's dump trucks carrying toxic sediment dredged from the Portage Canal, which is adjacent to plaintiff's Edgewater Street property, and to assist the subcontractor in illegally dumping the sediment at the county fairgrounds seven blocks away.  Plaintiff observed the overloaded dump trucks and a pumping barge splash contaminated substances on his Edgewater Street property.  Plaintiff reported this to the construction site manager who said that it would be cleaned up, but the substances likely hurt the value of his property.  In addition, the removal and transportation of toxic sediment from the canal disrupted plaintiff's business operations and caused him to lose revenue.

One morning in December 2016, defendants Murphy and Manthey drove past the Edgewater Street property repeatedly while defendant Thompson parked a police cruiser in front of Gruber Automotive's garage doors for more than two hours.  They were conducting electronic surveillance of plaintiff's cell phone to collect telephone numbers "targeting plaintiff's business activities."  Dkt. #71, ¶ 27.  Another morning in January 2017, Murphy and Manthey ordered a police lieutenant to search plaintiff's business at Edgewater Street, supposedly because an unknown 911 call was placed from that address.  Because the call was made from an employee's cell phone that was turned off, plaintiff surmised defendants made the call themselves as a ruse to enter and search his business without a warrant.

These activities resulted in plaintiff's losing customers who feared being arrested or harassed by the police.

OPINION

A. <u>Legal Standard</u>

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." <u>Richards v. Mitcheff</u>, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, the complaint must comply with Rule 8(a)(2) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" that gives defendants "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (complaint must allege sufficient facts to state claim to relief that is "plausible on its face"). When considering a motion to dismiss for failure to state a claim, a court must accept as true the well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. <u>Alam v. Miller Brewing Co.</u>, 709 F.3d 662, 665-66 (7th Cir. 2013); <u>Yeksigian v. Nappi</u>, 900 F.2d 101, 102 (7th Cir. 1990). Further, in addressing any pro se litigant's complaint, the court must construe the complaint liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972); <u>Luevano v. Wal-Mart Stores, Inc.</u>, 722 F.3d 1014, 1027 (7th Cir. 2013) (federal pleading standards for pro se plaintiffs are "considerably relaxed").

Plaintiff makes the broad assertion in his amended complaint that defendants violated his right to "equal protection." Although he also mentions that defendants were involved in a conspiracy, he does not attempt to raise a claim under 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights) and I can not construe such a claim from the allegations in his

complaint.  As defendants point out, and plaintiff does not dispute, a conspiracy to deprive a person of equal protection under the law "must be motivated by racial, or other class-based discriminatory animus."  Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008).   The allegations in the amended complaint make it clear that plaintiff believes the motivation for the conspiracy is greed and not class-based discriminatory animus.

The Fourteenth Amendment's equal protection clause "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination."   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)).  To state a Fourteenth Amendment equal protection claim, plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.  In this case, plaintiff does not allege that he is a member of any protected class.  He alleges that defendants abused their power by targeting him and his business in an effort to force him to sell his Edgewater Street property to Columbia County at below market value.  To proceed under this type of "class-of-one" theory under the equal protection clause, plaintiff must establish at least two things:   (1) defendants have treated him differently from others similarly situated and have done so intentionally; and (2) defendants had no rational basis for the difference in treatment.  Fares Pawn, LLC v. Indiana Department of Financial Institutions, 755 F.3d 839, 845 (7th Cir. 2014).  It is unclear whether plaintiff must prove that defendants had a hostile or illegitimate motive for their conduct or decisions.  Id. ("In Del Marcelle v. Brown County Corp., 680 F.3d 887 (7th Cir.

8

2012) (en banc), this court divided on [whether plaintiffs must prove animus], leaving no controlling opinion.").

In addition, as explained in my previous order, courts usually cannot resolve a land dispute involving a government taking or condemnation proceeding until the property owner exhausts all of his available state remedies for just compensation. <u>Williamson</u>, 473 U.S. at 193-94. However, the Court of Appeals for the Seventh Circuit has recognized that "bona fide equal protection claims arising from land-use decisions can be made independently from a takings claim" in cases in which the governmental action is "'wholly impossible to relate to legitimate governmental objectives.'" <u>Forseth v. Village of Sussex</u>, 199 F.3d 363, 370-71 (7th Cir. 2000) (quoting <u>Esmail v. Macrane</u>, 53 F.3d 176, 180 (7th Cir. 1995)). This standard is satisfied when the equal protection claim is based on: (1) the malicious conduct of a governmental agent (or a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective); or (2) a "prayer for equitable relief and a claim [that] would evaporate if the [county] treated everyone equally, that sufficiently suggest that the plaintiff has not raised just a single takings claim with different disguises." <u>Id.</u> at 371 (internal citations and quotation marks omitted). For example, in <u>Forseth</u>, the court of appeals found that the plaintiffs stated an independent equal protection claim because they alleged that their rights had been violated by the village's decision to approve their final plat on the condition that plaintiffs convey a portion of their property to the village president. <u>Id.</u> at 370. <u>See also Geinosky v. City of Chicago</u>, 675 F.3d 743, 749 (7th Cir. 2012) (finding general allegations of 24 baseless parking tickets from several officers in one police

9

department enough to state a class-of-one equal protection claim).

## B.  Summary of Plaintiff's Claims

In this case, it is difficult to ascertain the exact nature of plaintiff's claims from the convoluted allegations of corruption and conspiracy in his complaint.  Plaintiff includes allegations against people not named as defendants in this action, and in some instances, fails to identify who was involved in a particular incident.  As I explained in my previous order, plaintiff must connect each alleged constitutional violation with a particular defendant.  Bank of America, N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful"); Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012) (defendant cannot be held liable unless he was personally involved in alleged conduct).  Therefore, I decline to consider any alleged constitutional violation not connected to a named defendant in this case.  In addition, because the City of Portage Police Department does not have a separate legal existence from the City of Portage, it cannot be sued under § 1983 and will be dismissed as a defendant in this case.  Chan v. Wodnicki, 123 F.3d 1005, 1007 (7th Cir. 1997).

As to the claims against the named defendants, I understand plaintiff to allege that starting on November 1, 2014, defendants took a variety of actions targeted at plaintiff and his business only for the reason of harassing him, which caused him to pay extra fees, take time and money away from his business and lose customers.  Plaintiff also alleges that defendant City of Portage has a policy, custom or practice that caused these violations,

10

presumably based on the fact that at least some of the alleged violations were committed by the chief of police and the city administrator.  Connick v. Thompson, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.").  I will discuss each alleged violation separately below.

## C.  Zoning Change

Plaintiff alleges that in March 2015, defendant Murphy ordered the city attorney to change either the zoning ordinance or zoning classification related to the Jefferson Street property that plaintiff leased for storage and that these changes resulted in substantial fees and the requirement for a conditional use permit.  Defendants point out correctly that the council has the authority to amend zoning ordinances; Portage's zoning ordinance was not amended in 2015; and Portage Ordinance § 90-52 shows that vehicle repair shops have been required to obtain conditional use permits in all zoning districts since at least March 28, 2013.  Newcomb v. Brennan, 558 F.2d 825, 829 (7th Cir. 1977) (court may take judicial notice of municipal ordinances on motion to dismiss).

I agree with defendants that, in light of the ordinances, nothing in the complaint gives rise to an inference that Murphy had the authority to change a zoning classification or had any other personal involvement in the alleged zoning reclassification.  Accordingly, I will dismiss plaintiff's equal protection claim against defendant Murphy with respect to changing the zoning classification.

11

### D.  Spilling Toxic Substances

Plaintiff alleges that from May 16, 2016 to July 2016, defendants Murphy, Manthey and Thompson ordered city employees to block streets for dump trucks carrying toxic sediment dredged from a nearby canal to the city fairgrounds.  I agree with defendants that plaintiff has pleaded himself out of court on this claim by alleging that toxic substances were dumped on other properties besides his own.  In fact, plaintiff alleges that the substances "spilled" onto his property from overloaded dump trucks en route to another property or "splashed" onto his property from the nearby pumping barge, and the substances themselves were "dumped" on city property seven blocks away.

More important, apart from alleging that defendants blocked the street for the dump trucks, plaintiff does not allege that the named defendants had anything to do with the dump trucks spilling or splashing toxic substances onto his property.  Plaintiff's allegations with respect to this conduct largely implicated other defendants who have been dismissed.

Finally, the primary injury that plaintiff alleges with respect to the spilling of toxic sediment is a reduction in the value of his property, which is the subject of the ongoing state condemnation action that plaintiff has not yet exhausted.  Although plaintiff alleges that he lost revenue because of the dredging operations at the nearby canal, it is not reasonable to infer from the vague allegations in the complaint that the spillage in particular (versus the dredging itself) resulted in a loss of business for plaintiff.  As the Court of Appeals for the Seventh Circuit has held, "the purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision

of municipal services or for improper conduct of an investigation in connection with them into a federal case." McDonald v. Village of Winnetka, 371 F.3d 992, 1009 (7th Cir. 2004). Accordingly, I find that plaintiff has not stated an independent equal protection claim with respect to the dumping toxic substances against any defendant.

### E.  Ticketing of Vehicles and Searches of Property

Plaintiff's remaining allegations relate either to the ticketing and searching of cars parked on the properties where he conducted his business or to the search of the property itself.  Specifically, plaintiff alleges the following:

1.  Between November 1, 2014 and February 15, 2017, defendants Murphy and Manthey ordered defendant Thompson and other officers to tag only those vehicles registered to plaintiff and his customers as "abandoned" or "junk" on the Jefferson Street lot.

2.  In December 2015, defendant Thompson had several vehicles towed from the Gruber Automotive lot on Edgewater Street during inclement weather and made plaintiff pay the towing and storage fees.

3.  In March 2016, defendant Murphy participated in the search of vehicles parked at the Jefferson Street property and removed paper documents from the vehicles.

4.  In April 2016, defendant Murphy threatened to shut off the water at the Jefferson Street property until plaintiff allowed Murphy, Manthey and Thompson to search the property to see whether it was compliant with drinking water requirements.

5.  In May 2016, defendants Murphy, Manthey and Thompson searched the Jefferson Street property with water service employees.

6.  One morning in December 2016, defendants Murphy, Manthey and Thompson conducted what plaintiff suspects was electronic surveillance of his cell phone at the Edgewater Street property.

7. One morning in January 2017, defendants Murphy and Manthey ordered a police lieutenant to search plaintiff's business at Edgewater Street in response to what plaintiff believes was a fake 911 call.

In a brief argument, defendants object to these claims of "bad acts" on the grounds that (1) plaintiff failed to allege that there was no legitimate reason for these acts; and (2) plaintiff failed to identify a similarly situated individual who was treated differently. Dkt. #81 at 9-11. Defendants' first argument is not persuasive because Rule 8 does not require a plaintiff to use any particular magic words to state a claim; it is reasonable to infer from plaintiff's complaint that defendants were acting out of mere spite rather than for any legitimate reason. Questions such as whether the cars ticketed were in fact "junk" or whether defendants had good reason for question the water quality are for summary judgment or trial.

With respect to defendants' second argument, even though plaintiff does not identify similarly situated individuals or entities by name, he does allege that other repair shops were not subject to the same scrutiny as his and that only vehicles associated with his business were ticketed or towed. E.g., dkt. #71 at 4 (officers "started tagging, oddly, only vehicles registered to Plaintiff and vehicles belonging to customers pending repair by Plaintiff") and 5 ("[T]he Auto Repair and Sales business located one block away at 101 Dewitt Street, had not been investigated, was not placed under surveillance, and no quality of life violations issued for allegedly "junk vehicles.'"). Further, defendants have not cited any authority for their view that plaintiff must identify and describe the similarly-situated individuals in his complaint. Although there is some confusion in the case law about this issue, I am not

14

convinced that at the pleading stage, plaintiff must identify and describe the similarly-situated individuals associated with each of his claims.

The Court of Appeals for the Seventh Circuit has explained that "in the context of complicated government investigations or prosecutions, we have relied on careful application of the similarly-situated requirement to distinguish between unfortunate mistakes and actionable, deliberate discrimination." Geinosky, 675 F.3d at 747-48 (citing McDonald, 371 F.3d at 1009 as an example). The Supreme Court also relied on an allegation of disparate treatment in a case involving the discriminatory provision of municipal services. Id. (citing Olech, 528 U.S. at 565 (village demanded 33-foot easement to connect plaintiff's property to municipal water supply)). However, in Geinosky, the court of appeals held that:

> [I]n this case, requiring Geinosky to name a similarly situated person who did not receive twenty-four bogus parking tickets in 2007 and 2008 would not help distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection. Such a requirement would be so simple to satisfy here that there is no purpose in punishing its omission with dismissal. Here, the pattern and nature of defendants' alleged conduct do the work of demonstrating the officers' improper discriminatory purpose. Geinosky's general allegation that defendants 'intentionally treated plaintiff differently than others similarly situated' is sufficient here, where the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose. To require more would elevate form over substance.

675 F3d at 748.

Much of the conduct described by plaintiff is similar to that at issue in Geinosky—the regular ticketing of cars as "junk" and towing only plaintiff's cars from his own property during inclement weather. Although the allegedly bogus searches of plaintiff's business and the threat to turn off his water may be closer to the situations in McDonald or Olech, the

15

court of appeals has noted in dicta that "[e]ven in a case where a plaintiff would need to identify a similarly situated person to prove his case, like the <u>McDonald</u> case . . ., we see no basis for requiring the plaintiff to identify the person in the *complaint*." <u>Geinosky</u>, 675 F.3d at 748 n. 3.

Giving plaintiff the benefit of the doubt as I am required to do at this early stage for a pro se plaintiff, and considering the pattern of unjustified harassment plaintiff has alleged, I find that the above allegations of ticketing and searches state a claim upon which relief may be granted under the equal protection clause.

ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendants City of Portage, City of Portage Police Department, Shawn Murphy, Kenneth Manthey and Klaude Thompson, dkt. #78, is DENIED with respect to plaintiff's claims that defendants violated his rights to equal protection in the following ways:

  a. Between November 1, 2014 and February 15, 2017, defendants Murphy and Manthey ordered defendant Thompson and other officers to tag only those vehicles registered to plaintiff and his customers as "abandoned" or "junk" on the Jefferson Street lot.

  b. In December 2015, defendant Thompson had several vehicles towed from the Gruber Automotive lot on Edgewater Street during inclement weather and made plaintiff pay the towing and storage fees.

  c. In March 2016, defendant Murphy participated in the search of vehicles parked at the Jefferson Street property and removed paper documents from the vehicles.

    d.   In April 2016, defendant Murphy threatened to shut off the water at the Jefferson Street property until plaintiff allowed Murphy, Manthey and Thompson to search the property to see if it was compliant with drinking water requirements.

    e.   In May 2016, defendants Murphy, Manthey and Thompson searched the Jefferson Street property with water service employees.

    f.   One morning in December 2016, defendants Murphy, Manthey and Thompson conducted electronic surveillance of plaintiff's cell phone at the Edgewater Street property.

    g.   One morning in January 2017, defendants Murphy and Manthey ordered a police lieutenant to search plaintiff's business at Edgewater Street in response to what plaintiff believes was a fake 911 call.

    h.   Defendant City of Portage has a policy, custom or practice that caused the above violations allegedly committed by defendants Murphy and Manthey.

2. Defendants' motion to dismiss is GRANTED with respect to all of plaintiff's other claims, which are DISMISSED.

3. Defendant City of Portage Police Department is DISMISSED as a defendant in this case.

Entered this 21st day of July, 2017.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

17